**RAKE PETTI, P.C.**
2701 E. CAMELBACK ROAD
SUITE 160
PHOENIX, ARIZONA 85016
TELEPHONE (602) 773-2622
FACSIMILE (602) 265-2628
_____

Frederick R. Petti #011668

Attorneys for Defendant
Christopher S. Bartlemus

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR08-0256-004-PHX-SMM |
| Plaintiff, | |
| vs. | **DEFENDANT BARTLEMUS' SENTENCING MEMORANDUM** |
| CHRISTOPHER S. BARTLEMUS (4), et al., | |
| Defendants. | |

Defendant Christopher Bartlemus is scheduled to be sentenced by this Court at 11:00 a.m. on April 12, 2010. This memorandum is being offered in support of Mr. Bartlemus. We are requesting that the Court impose a sentence below the 97 month term recommended by the Probation Officer. The basis for this request is twofold. First, the recommendation does not take into account Mr. Bartlemus' cooperation with the government in this matter. Second, the advisory United States Sentencing Guidelines applied in Mr. Bartlemus' case calls for a sentence not based on empirical evidence of fair, reasonable sentencing for a financial crime but, rather, on arbitrary political considerations that have no bearing on what actually occurred in Mr. Bartlemus' case. After *United States v. Booker,* 543 U.S. 220 (2005), and its progeny, this Court is no longer bound to sentence Mr. Bartlemus in accordance with the Advisory Guidelines and it may now look to the factors set forth in 18 U.S.C. § 3553(a) to determine what is a fair and reasonable sentence.

This Sentencing Memorandum is supported by the accompanying Memorandum of Points and Authorities and the record in this case.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      Sentencing Guidelines Post *Booker***

   **A.      *Booker* and its Progeny**

In *United States v. Booker,* 543 U.S. 220 (2005), the Supreme Court found that the United States Sentencing Guidelines were "effectively advisory," *id.* at 245, and, in accordance with 18 U.S.C. § 3553(a), the Guidelines were just one of many factors sentencing courts could consider in determining an appropriate sentence. In *Kimbrough v. United States,* 552 U.S. 85 (2007), the Court further clarified its finding in *Booker* that the Guidelines are advisory only, and held that a categorical disagreement with and variance from the Guidelines is not suspect. *Id.* at 91. Thereafter, in *Spears v. United States,* 555 U.S. ___ (2009), the Court stated that district courts "are entitled to reject and vary categorically from the crack-cocaine Guidelines based on *a policy disagreement* with those Guidelines.' *Id.* at ___ (Slip Op. at 5) (emphasis added). Most recently in *Nelson v. United States,* 555 U.S. ___ (2009), the Court emphatically held that the "Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable. *Id.* at ___ (Slip Op. at 3) (emphasis in original).

In the post-*Booker* era, this Court must make the Guidelines "the starting point and the initial benchmark" for its sentencing decision. *Gall v. United States*, 128 S. Ct. 586, 596 (2007); *United States v. Carly*, 520 F.3d 984, 992 (9th Cir. 2008) (*quoting Gall*). Because the Government is filing a 5K1.1 motion permitting the Court to depart downward from the advisory guidelines, this Court will have virtually unfettered discretion in determining the appropriate sentence in this matter. The only restriction on this Court is that its sentence is reasonable under the factors set forth in 18 U.S.C. § 3553(a). *Booker*, 543 U.S. at 261. Moreover, any reviewing court must "give due deference" to this Court's decision that the § 3553(a) factors, on the whole, justify the sentence imposed. *Gall*, 128 S. Ct. at 597. Because this Court sees and hears the evidence, makes credibility determinations, and has full knowledge

of the facts and gains insight not conveyed by the record, the mere fact that a reviewing court might reasonably conclude that a different sentence is appropriate is insufficient to justify reversing this Court. *Id. See also United States v. Autery*, 555 F.3d 864 (9th Cir. 2009).

Regarding Mr. Bartlemus' sentencing, *Booker* and its progeny stand for the proposition that in considering what is an appropriate sentence for Mr. Bartlemus under 18 U.S.C. § 3553(a), this Court may categorically reject the underlying premise contained in the Guidelines that lengthy sentences are appropriate in white collar cases, and the Court may, if it chooses, sentence Mr. Bartlemus far below what may be calculated by strict application of the Guidelines. As set forth below, there are policy appropriate reasons for this Court to break with the lengthy sentences for white collar crimes suggested by the Guidelines, and that it is likewise appropriate to sentence Mr. Bartlemus to a term of probation.

**B.     Lengthy Incarceration Terms Are Not Supported By Empirical Evidence**

On August 10, 2009, Mr. Bartlemus pled guilty to one count of conspiracy to commit bank fraud (in violation of 18 U.S.C. §§ 1341, 1343, 1344 and 1349). As part of his plea agreement with the government, Mr. Bartlemus agreed to cooperate with the government. Mr. Bartlemus did, in fact, cooperate with the government in its prosecution of his co-defendants, in particular Mario Bernadel. In addition to testifying at Mr. Bernadel's trial, Mr. Bartlemus assisted the government in the prosecution of other cases, including the prosecutions of Eitan Maximov, Dustin Thompson and Sean McLaughlin. The Presentence Report writer, Justine Kozak, properly calculated that the Sentencing Guidelines call for a sentencing range between 97 to 121 months. Of course, Ms. Miller's calculation does not account for any downward departure pursuant to a government motion under § 5K1.1.

The problem with the assumption underlying the Guideline policy that longer sentences in white collar crimes will deter future white collar criminals is that the empirical evidence is to the contrary.[1] In other words, lengthy incarceration does not enhance deterrence for financial

---

[1] By introducing binding regulations for calculating prison terms and allowing for circuit court review of sentencing determinations, Congress intended the Guidelines to limit individual judicial discretion and to make sentences consistent system wide. *See* 28 U.S.C.

3

offenders. Studies of these types of offenders have shown no difference in recidivism patterns between offenders who received jail time and those sentenced to probation. *See* David Weisburd, *Specific Deterrence and Sample of Offenders Convicted of White Collar Crimes,* 33 Criminology 587, 597 (1985). In fact, white collar criminals who were imprisoned actually have a higher rate of recidivism. *Id.* Recent studies and findings are consistent with earlier criminological studies dating back almost forty years. *See* Elizabeth Szockyj, *Imprisoning White Collar Criminals?,* 23 S. Ill. Univ. L. J. 485, 495 (1999). White collar workers are extraordinarily sensitive to public perception, and simply becoming ensnared in the criminal justice system has the greatest impact on offenders. *Id.* At least one study has suggested that shaming white collar criminals may be more effective than longer term sentences. *See* Dan M. Kahan and Eric Posner, *Shaming White-Collar Criminals: A Proposal for Reform of the Federal Sentencing Guidelines*, JOURNAL OF LAW AND ECONOMICS, Vol. XLII, pp. 365-91 (April 1999).

     Mr. Bartlemus has pled guilty to his criminal activity, cooperated with the government, and he has fully accepted responsibility for his actions. Once Mr. Bartlemus decided to cooperate with the government, he did so completely, providing truthful and useful information. It is fair to say that Mr. Bartlemus, a high school dropout, got caught in a moment in time when greed and deceit were the ethic in the mortgage industry in Arizona and he did not possess the requisite wherewithal to resist the temptation to lie in the pursuit of easy money.

     Mr. Bartlemus has truly learned from his actions. Over the last two years he has worked tirelessly to start a new business, cleaning pools, so that he could continue to support his wife, Deb, and his daughter, Aleena. He is fortunate to enjoy the love and support of his wife and

---

§ 991(b) ("[The Guidelines shall] provide certainty and fairness in meeting the purpose of sentencing, avoiding unwarranted disparities among defendants with similar records who have been found guilty of similar criminal conduct"). The response to the Guidelines and their underlying premise was overwhelmingly critical and, in time, a new disparity developed between judges and lawyers who worked the Guidelines to avoid unfairly harsh sentences and those judges and lawyers who follow the Guidelines as gospel. *See* Daniel J. Freed, *Federal Sentencing in the Wake of Guidelines: Unacceptable Sentences*, THE YALE LAW JOURNAL, Vol. 101, No. 8, pp. 1681-754 (June 1992).

daughter, and his actions since his arrest demonstrate more than any words that Mr. Bartlemus is a different man today, and no good purpose would be served by sentencing to any term of imprisonment.

We urge this Court to reject the antidotal policy underlying the Guidelines that such lengthy sentences are necessary in financial crimes cases to deter both the defendant and others.

**II.    18 U.S.C. § 3553(a) Factors**

To determine the particular sentence to be imposed, the Court shall consider:

(1)  The nature and circumstances of the offense and history and characteristics of the defendant;

(2)  The need for the sentence imposed –

(A)  To reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

(B)  To afford adequate deterrents to criminal conduct;

(C)  To protect the public from further crimes of the defendant; and

(D)  To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner…

18 U.S.C § 3553(a)(1).

**A.    Nature And Circumstances Of The Offense**

Although Mr. Bartlemus was not the architect of the scheme that brings him before the Court, he was certainly critical to the "success" of the scheme. There is also little debate that mortgage fraud is a serious offense, and that the actions of Mr. Bartlemus and his co-defendants resulted in significant loses to the victim banks.

**B.    Characteristics Of The Defendant**

The basic characteristics of Mr. Bartlemus can be gleamed by reading the Presentence Report. He is 31 years old, the second of Gordon Bartlemus and Jumrun Marke's four sons. He was born in San Francisco and grew up in Phoenix, Arizona. He married Deb Lizotte on February 10, 2007. He and Deb have one daughter, age 6.

RAKE PETTI, P.C.
2701 E. Camelback Road, Suite 160
PHOENIX, ARIZONA 85016
Telephone (602) 264-9081

5

What cannot be learned from reading the presentence report is the true measure of Mr. Bartlemus. For that, it is best to look at how Mr. Bartlemus has responded to this prosecution. Once represented by counsel, he decided to cooperate with the government and he did so completely and truthfully. In the nearly two years since his arrest, Mr. Bartlemus, rather than wallowing in self-pity, has worked to create a new business to support himself and his family. Unlike many others involved in white collar crime, Mr. Bartlemus did not elect to go into another business where he might be tempted by the allure of money; instead he decided to start a pool cleaning business, a business that is growing because of Mr. Bartlemus' hard work and dedication.

### C.  Just Punishment For The Offense

In deciding what sentence to impose, this Court must consider the seriousness of Mr. Bartlemus' offense, the need for the sentence to promote respect for the law, and to provide for a just punishment. There is no question that Mr. Bartlemus' actions resulted in a serious violation of federal law. There is also no question that Mr. Bartlemus and his co-defendants caused banks to suffer real and substantial losses.

Regarding the need to promote respect for the law and the need to impose a just punishment, Mr. Bartlemus has suffered greatly for his actions. He has already signed an agreement with the State of Arizona which prohibits his employment in the banking, financial and real estate industries. It has caused Mr. Bartlemus tremendous personal pain as he reflects on how his misguided pursuit of quick wealth has caused so much pain and suffering for his family and has led to his standing before this Court awaiting to be sentenced. He worries everyday about his ability to continue to support his wife and daughter. In other words, Mr. Bartlemus has been shaken to his core by his indictment and further punishment will do little to promote his respect for the law or satisfy any legitimate need to punish the guilty.

### D.  DeterrentsTo Criminal Conduct

Regarding the need to deter others, Mr. Bartlemus' willingness to cooperate with the government and the resulting convictions of others will do as much as anything to deter others

6

from following in his footsteps. Incarcerating Mr. Bartlemus will neither enhance nor amplify the deterrent effect of his cooperation.

### E. To Protect The Public

There is no need to impose a sentence of incarceration on Mr. Bartlemus in order to protect the public from further crimes at the hands of Mr. Bartlemus. He is not the type of person likely to repeat his offense, rather he is the type of person who now understands that nothing good happens from not turning square corners in either business or life. There is little doubt that Mr. Bartlemus has learned his lesson and that he is no longer a threat to society.

### F. Benefit To The Defendant

There is no benefit to Mr. Bartlemus in sentencing him to a term of imprisonment. He is already working hard and diligently on his post conviction life. He is providing for his family, not only financially but also with love and guidance. He is a man that has responded to his difficulties honorably and with grace. Nothing will be gained nor served by interrupting his remarkable progress.

## III. Requested Sentence

Mr. Bartlemus asks this Court to sentence him to a term of probation or, in the alternative, to a combination of community confinement or home detention that will permit him to continue to work to provide for his family and meet his obligations.

## IV. Conclusion

Mr. Bartlemus respectfully requests the Court to consider the § 3553 factors enumerated above as reasonable grounds for sentencing him to a term of probation or to the less restrictive punishment possible.

DATED this 6th day of April, 2010.

RAKE PETTI, P.C.

By  /s/ Frederick R. Petti
      Frederick R. Petti
Attorneys for Defendant
Christopher Bartlemus

7

**CERTIFICATE OF SERVICE**

I hereby certify that on April 6, 2010, I electronically transmitted the attached document entitled Defendant Bartlemus' Sentencing Memorandum to the Clerk's Office using the CM/ECF System for filing and transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Joy Malby Bertrand | joyous@mailbag.com |
| Dana Carpenter | danacarpenter5@gmail.com |
| Taylor William Fox | taylor.fox@azbar.org |
| Patricia Ann Gitre | patgitre@patriciagitre.com |
| Eugene Marquez | attorneyeugenemarquez@gmail.com |
| James Sun Park | sunparklaw.us |
| Kevin Rapp | Kevin.rapp@usdoj.gov |
| Michael J. Bresnehan | mbresnehan@hotmail.com |

/s/ Sherry Samford

8